IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **REVIVE RX, LLC,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:25-cv-03731 |
| § | |
| **VALHALLA MSO, LLC and** § | |
| **IRONSAIL PHARMA, LLC,** § | |
| § | |
| Defendants. § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Revive RX, LLC ("**Revive**" or "**Plaintiff**"), by and through its attorneys, respectfully files this First Amended Complaint[1] against Defendants Valhalla MSO, LLC ("**Valhalla**") and Ironsail Pharma, LLC ("**Ironsail**") (collectively, "**Defendants**"), and in support thereof respectfully alleges and shows the Court as follows:

## SUMMARY

1. This is a suit on a sworn account for quantum meruit and for unjust enrichment.

2. Revive is a leading mail-order pharmacy that provides generic and compounded medications to customers nationwide. Defendants are engaged in administrative services and served as a prescription procurement platform for physician practices and med spas (collectively, the "**Practices**" or "**Defendants' clients**"), including, but not limited to, Rosanna Family Health Nurse Practitioner P.C. and Manidvipa Health, LLC.

3. Defendants directed the Practices' business to Revive through their online prescription procurement platform. To pay for the prescriptions placed through Defendants' online

---

[1] While Revive refers to this pleading as its "First Amended Complaint," Revive's original pleading was its Original Petition filed in the state court action that was removed to this Court.

platform, Defendants maintained accounts at Revive that covered the aggregate of Defendants' clients in Revive's system.

4. Through use of Defendants' platform, the Practices submitted orders to Revive for generic and compounded medications to fill patient prescriptions. Revive then compounded and mailed the prescriptions directly to the patients. However, only Defendants had direct business relationships with Revive.

5. As the director of the Practices' orders to Revive, and consistent with the parties' business dealings, Defendants were charged for the products and services provided by Revive. For over a year, Defendants paid Revive according to the invoices received and made consistent efforts to timely perform their payment obligations. However, between June and October 2024, Defendants failed to pay multiple Revive invoices for products and services provided by Revive, despite agreeing to do so and having already established a consistent practice of doing so. Defendants owe Revive over $1.5 million, all of which remains past due at the time of this filing.

6. There is no legal or equitable reason why Defendants should not have to pay the charges Defendants agreed to pay Revive for Revive's products and services. Revive brings this lawsuit based on a sworn account and quantum meruit, seeking to hold Defendants liable for payment of Revive's invoiced amounts, which currently total an unpaid balance of $1,584,095.62. Revive also seeks, as a matter of law, to recover for accrued and accruing pre and post-judgment interest, reasonable attorneys' fees, and costs yet to be determined. Defendants had actual and reasonable notice of Revive's expectation that they would pay for Revive's products and services, which Defendants ultimately failed to do. If Defendants' debt to Revive is not paid, as a matter of law, or alternatively, in equity, Defendants will be unjustly enriched—having derived substantial

revenue from numerous products and shipments made by Revive, for which Revive has not been paid.

## PARTIES

7. Revive is a Texas limited liability company with its principal place of business at 7322 Southwest Freeway, Suite 1200, Houston, Harris County, Texas 77074. Revive is a compounding pharmacy business that services its customers nationwide.

8. Valhalla is a limited liability company organized under the laws of the State of New York, having a primary address of 158-01 Cross Bay Boulevard, Howard Beach, New York 11414. Valhalla may be served through its registered agent, Corporation Service Company—located at 80 State Street, Albany, New York 12207.

9. Ironsail is a limited liability company organized under the laws of the State of Wyoming, having a primary address of 158-01 Cross Bay Boulevard, Howard Beach, New York 11414. Ironsail may be served through its registered agent, Business Filings Inc.—located at 187 Wolf Road, Suite 101, Albany, New York 12205.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to the following statutes: (a) 28 U.S.C. § 1332, which gives district courts jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states; and (b) 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims. Defendants do not dispute this Court has subject matter jurisdiction based on diversity jurisdiction, as Defendants removed Revive's state court action to this Court.

11. This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants conducted business in the State of Texas and had minimum contacts with Texas such that the Defendants are subject to the jurisdiction of Texas courts under Texas Civil

Practice & Remedies Code § 17.042 and the Fourteenth Amendment to the United States Constitution. As alleged in greater detail *infra* (*see* ¶¶ 18–28), Defendants established a business relationship with Revive as a customer of Revive through its account at Revive and through Defendants' prescription procurement platform. Revive, a Texas-based company that manufactures its products in Texas, would fill prescriptions ordered through Defendants' prescription procurement platform, thus creating a continuing relationship and continuing obligations between Revive and Defendants for the purpose of Defendants earning a profit from its activities in Texas. Moreover, as part of Defendants' continuing business relationship with Revive, Defendants' payment obligations were due to Revive at its headquarters in Houston, Texas.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and/or (3) because a substantial part of the events or omissions giving rise to Revive's claims occurred in this judicial district and because Defendants are subject to this Court's personal jurisdiction with respect to this action.

13. By reason of the foregoing, the Court has jurisdiction over this action and venue is proper in this Court.

## FACTUAL ALLEGATIONS

14. Founded in 2016, Revive's core mission is to redefine pharmaceutical care. Revive is a premiere 503A[2] compounding pharmacy that is dedicated to delivering customized medications tailored to patients' unique needs. Revive employs over one-hundred people, including board certified pharmacists, microbiologists, and chemists—each of whom bring a

---

[2] Section 503A of the Federal Food, Drug, and Cosmetic Act ("**FD&C Act**").

wealth of knowledge designed to ensure patients receive the highest quality compounded medications quickly, efficiently, and at reasonable prices.

15. In addition to more traditional drugs, Revive can create personalized medications tailored to individual patient needs based on a physician's prescription. These can include items such as compounding weight loss medications, bioidentical hormone replacement therapy, pain management creams, dermatological compounds, or unique injectables.

16. Founded in 2021, Valhalla is a Marketing Services Organization ("**MSO**") that focuses on supporting healthcare providers by offering a range of technical, operational, and telehealth tools. Valhalla operates specialty clinics, providing both in-person and telemedicine services, and delivers technical and operational support to practices—enabling efficient clinic operations and patient billing and payment systems.

17. Founded in 2024, Ironsail is a subsidiary of Valhalla Holdings, LLC, and operates interchangeably with Valhalla. Ironsail operates a managed pharmacy marketplace that provides healthcare providers with streamlined access to pharmacies—including those offering compounded medications, like Revive.

18. Beginning in 2023, Valhalla—and eventually Ironsail—was onboarded as an account at Revive. At the time of Valhalla's initial account setup with Revive, Valhalla—which was onboarded as Valhalla Vitality ("**Vitality**") at the time—provided its credit card information to pay for prescription orders. The creation of Defendants' accounts initiated Revive's obligations to Defendants, which were all performed in Houston, Texas, and the first of many contacts over a long period of time to maintain the account and its orders.

19. Under Defendants' accounts, Defendants setup "provider portals" for each of Defendants' clients. Subsequently, the Practices registered on Valhalla's or Ironsail's platform

submitted orders to Revive through their portal under Defendants' account for medications and/or other products necessary to fill patients' prescriptions. However, the Practices did not purposefully seek to do business with Revive—it was only through Defendants' efforts and continuing business relationship with Revive that the Practices' orders were ever submitted to Revive.

20. For each order, Revive manufactured the custom medications and/or other products necessary to fill the prescription in Harris County at its Houston headquarters and mailed such medications/products directly to the Practices' patients. At all relevant times, Defendants were aware that Revive was based in Houston, Texas, and that Revive manufactured the medications/products and provided the services necessary to fill the orders placed through Defendants' platform in Houston, Texas.

21. Defendants were the primary account holders and the directors of all the Practices' business in the course of their dealings with Revive. In this capacity, Defendants were directly liable for each order submitted by the Practices, and Defendants expressly and impliedly agreed to pay Revive the amounts charged for the products and services Revive provided to the Practices.

22. Revive sent Defendants regular invoices detailing the amounts owed to Revive. The payment obligations associated with these invoices were due to Revive in Houston, Texas. Revive's invoices are directed to Defendants and are itemized according to the patient receiving the prescription and the name of the pharmaceutical manufactured. Further, each invoice reflected the respective and agreed-upon price for the manufacturing and shipping of the medications/products necessary to fill each prescription submitted through Defendants' account. Because they are not the account holders, the Practices that submitted the orders are not listed anywhere on the invoices. To ensure accuracy of the invoices and amounts owed to Revive,

Valhalla's and Ironsail's Chief Financial Officer worked with Revive's accounting department to reconcile the invoices and confirm that the charges and billings were correct.

23. Additionally, Defendants frequently emailed with Revive's accounting team to check the amounts of their outstanding debts and make payments toward those debts via credit card and wire transfer. At no point during these payments to Revive did Defendants claim they were not liable for the debt.

24. Revive kept systematic records of the amounts due from Valhalla, Ironsail, and also Vitality, which was the name initially used for Valhalla in Revive's accounting system. Accordingly, all debts recorded for Vitality were, in fact, owed by Valhalla.

25. Defendants profited from the medications/products and services provided by Revive by charging the Practices a marked-up price for Revive's products for the benefit of using Defendants' platform for submitting prescriptions for such products. By agreeing to pay Revive for the products sold on their account and then billing the Practices for Revive's products at marked-up prices, Defendants are not merely guarantors or third parties to the debt owed for those products. Defendants are—and always have been—solely liable for the debts associated with the orders submitted through their account at Revive.

26. Revive fulfilled the orders submitted through Defendants' account. For these medications/products and services, $1,584,095.62 is due and owing by Defendants to Revive.

27. Throughout the course of the business dealings, Revive sent Defendants several demands for payment. Revive clearly identified the amounts owed and specified the corresponding due dates for payment. Defendants acknowledged their debt and proposed a payment plan for the debt, but a plan was never successfully agreed upon.

28. As of the time of this filing, Defendants still owe Revive $1,584,095.62 for the medications/products and services provided by Revive. Revive has filled every prescription ordered through Defendants' account, without fail, yet Defendants refuse to pay Revive what they are rightfully owed.

## CAUSES OF ACTION

### COUNT I – COMMON LAW SUIT ON SWORN ACCOUNT

29. Revive repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

30. Revive pleads that Revive, in its usual course of business, sold through Defendants' account and delivered for Defendants' clients one or more items of goods or services as more particularly shown on the verified statement of account (the "Account"), a true and correct copy of which is attached as Exhibit A-1 to the Declaration of Sanjay Jajoo attached hereto as Exhibit A and incorporated herein by reference. Further, the goods sold through Defendants' account are itemized on Defendants' verified unpaid invoices (the "Invoices") which are attached hereto as Exhibit A-2 to the Jajoo Declaration (Ex. A) and incorporated herein by reference.[3] Such sales were made through Defendants' account for the benefit of both the Practices and the Defendants at the time and for the amounts shown on the Account. Defendants profited from the products and services provided by Revive.

31. In consideration of such sales, on which a systematic record has been kept, Defendants committed to and became bound and liable to pay Revive the prices charged for such goods and services in the cumulative principal amount of $1,584,095.62, such amount being a usual, reasonable, and customary charge for such items, as is shown on the Account and in the

---

[3] A Motion to Seal Exhibit A-2 has been filed. *See* ECF No. 18.

Invoices. The Account and Invoices further detail the specific amounts owed by Valhalla—under the account names "Valhalla" and "Vitality"—and Ironsail.

32. The Account is due in its entirety, and is now past due, owing and unpaid, although Revive has, prior to the filing of this suit, requested and demanded payment of the Account from Defendants. Despite numerous demands made by Revive upon Defendants for payment, Defendants have failed to pay the Account, to the damage of Revive in the principal sum of $1,584,095.62, plus pre-judgment interest as requested below. Revive has made allowance to the Account for all just payments, offsets, and credits.

## COUNT II – QUANTUM MERUIT

33. Revive repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

34. In addition, and in the alternative, Revive pleads that Revive provided valuable goods and services to Defendants and on behalf of their clients by filling orders placed through Defendants' account in the sum of $1,584,095.62, plus pre-judgment interest as requested below.

35. Defendants knowingly and willingly accepted the manufacturing and shipping services from Revive with reasonable notice that Revive expected compensation for those services and the resulting goods from Defendants, and Defendants have profited from the goods and services provided by Revive.

36. Revive did not have express contracts with Defendants or any of the Practices. Pursuant to the nature of the business relationship and course of dealing between Revive and Defendants, Revive manufactured and shipped the orders submitted through Defendants' accounts and subsequently charged Defendants for the furnished services and resulting goods.

37. As a result, Defendants are bound to pay Revive at least an amount equal to the reasonable value of the goods and services supplied at the time they were supplied for the Defendants' benefit. The reasonable value of the goods and services provided by Revive, for which Defendants benefited, is $1,584,095.62.

38. Defendants have failed to pay Revive compensation for such goods and services, yet have retained the benefits of the goods and services. Consequently, Defendants would be unjustly enriched in an amount at least equal to the outstanding debt if Defendants do not pay for such valuable goods and services.

39. By reason of the foregoing, Revive is owed and has sustained damages of $1,584,095.62, plus interest, costs, and attorneys' fees—no part of which has been paid although demand for payment was duly made.

## **COUNT III – UNJUST ENRICHMENT**

40. Revive repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

41. In addition, and in the alternative, Revive pleads that Defendants promised to pay Revive for the services provided to Defendants and the products sold through Defendants' account for the Defendants' benefit.

42. Revive did not have express contracts with Defendants or any of the Practices. Revive had an ongoing business relationship and course of dealing with Defendants on Defendants' account, which established the parties' understood obligations to each other.

43. Defendants negotiated with and gave approval to Revive for the costs of all products purchased through Defendants' account such that Defendants could profit from the services provided by Revive and the products sold.

44. Defendants did not object to the invoices provided to Defendants for the goods and services provided by Revive, nor did Defendants raise any formal or informal complaint during the course of the parties' business dealings.

45. Defendants have not paid for and currently owe Revive $1,584,095.62, plus accrued and accruing interest and all costs and attorneys' fees associated with this action.

46. Defendants took undue advantage by accepting the benefit of Revive's products and services then refusing to pay the outstanding debt to Revive.

47. As a direct and proximate result of Defendants' failure to pay Revive, Defendants benefited to Revive's detriment and were unjustly enriched.

48. Under Fifth Circuit case law, "unjust enrichment" can be an independent cause of action under Texas law. *Elias v. Pilo*, 781 F. App'x 336, 338, 338 n.3 (5th Cir. 2019).

49. Accordingly, Revive is entitled to damages in the amount of at least $1,584,095.62, with the total amount of damages to be determined by the Court, plus accrued and accruing interest, attorneys' fees, costs, and such other and further relief the Court deems appropriate.

## CONDITIONS PRECEDENT

50. Any and all conditions precedent to Revive's claims for relief have occurred, been performed, fully satisfied, and/or waived.

## ATTORNEYS' FEES

Based on the acts and/or omissions of Defendants described above, Revive has retained the services of Sheppard, Mullin, Richter & Hampton LLP to protect its interests and pursue the foregoing claims. Revive is therefore entitled, pursuant to Texas Civil Practice & Remedies Code § 38.001, and all other applicable Texas laws, to recover from the Defendants the attorneys' fees and costs incurred by Revive in connection with this dispute and in pursuing its claims. All

conditions precedent to Revive's recovery of attorneys' fees have been fulfilled by Revive or have been waived as a result of Defendants' acts or omissions.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff Revive RX, LLC, respectfully requests that Defendants Valhalla MSO, LLC, and Ironsail Pharma, LLC, be cited to appear and answer and that Revive be awarded the requested damages and remedies, including actual damages, pre-judgment and post-judgment interest, attorneys' fees and costs of court, and all other relief, at law or in equity, to which it may be justly entitled.

Dated: October 13, 2025

Respectfully submitted,

*s/ Gene R. Besen*
Gene R. Besen
Texas Bar No. 24045491
SDTX Federal No. 1004889
gbesen@sheppardmullin.com
Rebecca K. James
Texas Bar No. 24143046
SDTX Federal No. 3932210
rjames@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone: (469) 391-7400
Facsimile: (469) 391-7401

Eric S. Schlichter
Texas Bar No. 24007994
SDTX Federal No. 23321
eschlichter@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
845 Texas Avenue, 25th Floor
Houston, TX 77002
Telephone: (713) 431-7100
Facsimile: (713) 431-7101

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 13th day of October 2025.

*s/ Gene R. Besen*
Gene R. Besen